# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

VERNON FRANKLIN,

        Plaintiff

        v.

CITY OF KINGSBURG; TIM RAY; and
DOES 1 through 20 inclusive

        Defendants

CASE NO. 1:18-CV-0824 AWI SKO

ORDER RE: MOTION TO DISMISS

## I. Background

Plaintiff Vernon Franklin was a firefighter/EMT with the Kingsburg City Fire Department between 2006 and 2017. Franklin was the first and only African American member of the Fire Department. Tim Ray was the Fire Chief at the time. Defendants are Chief Ray and the City of Kingsburg.

In 2014, Franklin got into an altercation with a white co-worker. Franklin was written up while the co-worker was not. At an unspecified time in the past, Franklin had also been written up for unsafe driving and put on six-month paid leave while the incident was investigated. Franklin was responsible in part for maintaining self-contained breathing apparatus ("SCBA") equipment used by the Fire Department. In September 2015, Franklin asked Chief Ray if he could take a course on SCBA maintenance he thought was necessary for ensuring their safe use. Chief Ray denied the request. Franklin then e-mailed his request to Chief Ray, City Manager Alex Henderson, and the City of Kingsburg Safety Council. Franklin's supervisor, Captain Bob McGee, told Franklin in October that Chief Ray and the City Manager were upset with his e-mail and that he would consequently be punished. With reference to his prior write ups, Franklin was

given two 48-hour shift suspension and required to comply with a Performance Improvement Plan ("PIP").

Franklin then filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). After mediation, Franklin and the Fire Department came to a formal settlement agreement ("Settlement Agreement"). Franklin agreed to comply with two 6-month PIPs in return for pay withheld due to his suspension and a release of all prior other claims up to that point. In October 2016, Franklin and Chief Ray argued about Franklin's PIP.

In early 2017, Franklin's EMT accreditation with the Central California Emergency Medical Services Agency lapsed. Paramedics with the Fire Department are required to maintain that accreditation. Franklin corrected the problem; he was without accreditation for two weeks. Fire Department then started proceedings to end Franklin's employment. He was formally dismissed on May 12, 2017. Franklin challenged his dismissal through a civil service administrative process. Though the administrative law judge found in favor of Franklin, recommending that he not be fired, the Kingsburg City Council (who had the last word) rejected that conclusion and affirmed Franklin's dismissal. Additionally, Franklin filed a new EEOC complaint in August 2017; Franklin thereafter received a right to sue letter.

Franklin filed suit against Defendants City of Kinsgburg and Chief Ray on eight causes of action: 1) discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), 2) harassment in violation of FEHA, 3) retaliation in violation of FEHA, 4) failure to provide a harassment/retaliation/discrimination free work environment in violation of FEHA, 5) discrimination in violation of 42 U.S.C. § 2000e ("Title VII"), 6) retaliation in violation of Title VII, 7) violation of 42 U.S.C. § 1981, and 8) violation of 42 U.S.C. § 1983. Doc. 1, Complaint. Franklin has clarified that he is only suing Chief Ray based on the eighth cause of action. Doc. 7, 5:11-12. Defendants have made a motion to dismiss all eight causes of action. Doc. 6. Franklin opposes the motion. Doc. 7.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

no request to amend the pleading was made." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

### III. Discussion

**A. Employment Discrimination Claims – Causes of Action One Through Six**

These causes of action allege racial discrimination, racial harassment, and retaliation under FEHA and Title VII. As the legal arguments that apply to these causes of action are largely shared, they will be considered and addressed in parallel.

**1. EEOC Charges and Settlement Agreement**

In order to sue under FEHA and Title VII, a plaintiff is required to first exhaust certain administrative remedies. See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) ("Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies"). "To properly exhaust these claims, a claimant must first file the charge with either the EEOC (enforcing Title VII) or the Department of Fair Employment and Housing ("DFEH") (enforcing FEHA). When Title VII and FEHA claims overlap, the EEOC and DFEH are each the agent of the other for purposes of receiving charges, and thus a filing with one agency is considered to be constructively filed with the other." Chew v. City & Cty. of S.F., 2016 U.S. Dist. LEXIS 19987, *19-20 (N.D. Cal. Feb. 17, 2016). "A claimant cannot file a lawsuit until receiving a right-to-sue notice from the agency that specifically enforces those laws." Dornell v. City of San Mateo, 19 F. Supp. 3d 900, 905 (N.D. Cal. 2013). "[P]laintiff may only bring suit on claims that are 'like or reasonably related' to allegations mentioned in his administrative charges." Henry v. Regents of the Univ., 37 F. Supp. 3d 1067, 1083 (N.D. Cal. 2014), quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). "Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination. We construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002), quotations omitted.

In this case, the procedural history of exhaustion is not altogether straightforward. Franklin filed Charge Number 485-2016-00263 with the EEOC on May 26, 2016. Doc. 6-2, Ex. A.[1] Franklin alleged racial discrimination that occurred between October 26, 2015 and April 8, 2016; he checked the box for continuing action. His complaint is as follows:

> I. On or about August 2006, I was hired as a Fire Fighter/Paramedic. My supervisor is Bob McGee, Fire Captain. Shortly after being hired, Russ Davis informed me that, when he was growing up, he had a dog named 'nigger.' In November 2014, I was in a verbal altercation with George Alves. Subsequently, I was given a written disciplinary warning and mandated to attend a conflict management course. I understand that Mr. Alves frequently makes racist jokes while on the job. I understand that management is aware of Mr. Alves comments. I understand that Mr. Alves has never been disciplined. In August or September 2015, Tim Ray assigned me to the position of Self-Contained Breathing Apparatus. I had never performed the duties of this position and, as such, I requested to attend training. My request was denied. Mr. Ray then proceeded to yell at me in front of my peers in response to my request. Mr. Ray did not yell at any other employees at that meeting. I then reported a safety issue. Shortly thereafter, I was falsely accused of workplace harassment, driving recklessly, and endangering a coworker and patient. I was suspended. I understand that other non-Black employees have been accused of similar issues and they have not been disciplined or suspended.
>
> II. I was told that I was suspended while Respondent conducted an internal investigation into an alleged complaint. No other reason was given for the treatment.
>
> III. I believe I was given different terms and conditions of employment, harassed, disciplined, and suspended because of my Race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

The dispute was resolved by settlement between Franklin and Kingsburg in June 2016. The Settlement Agreement states in relevant part:

> 1. In exchange for the promises made by Respondent pursuant to Charge Number 485-2016-00263, Charging Party agrees not to institute a lawsuit under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, the Equal Pay Act (EPA), the Age Discrimination in Employment Act of 1967 (ADEA), as amended, or the Americans with Disabilities Act of 1990 (ADA), as amended, based on EEOC Charge Number 485- 2016-00263.

---

[1] Copies of the two EEOC charges and the settlement agreement are provided by the parties. Doc. 6-2, Ex A; Doc. 6-2, Ex B; Doc. 7-1, Ex. A. Franklin references all of these documents directly in his complaint. See Doc. 1, 4:22-5:2 and 13:15-16. Thus, they are incorporated by reference.

2. Further, the parties agree that submission of this agreement to EEOC will constitute a request for closure of EEOC Charge Number 485-2016-00263.

....

4. Respondent agrees that there shall be no discrimination or retaliation of any kind against the Charging Party as a result of filing this charge or against any person because of opposition to any practice deemed illegal under Title VII, the EPA, the ADEA, or the ADA, as a result of filing this charge, or for giving testimony, assistance or participating in any manner in an investigation, proceeding or a hearing under the aforementioned Acts.

Based on these documents, it appears that neither the EEOC or DFEH issued a right to sue letter concerning Charge Number 485-2016-00263.

After he was discharged, Franklin filed Charge Number 485-2017-00383 with the EEOC on August 22, 2017. Doc. 7-1, Ex. A. Franklin alleged retaliation that occurred on May 12, 2017; he did not check the box for continuing action. His complaint is as follows:

I. I was hired on or about August 28, 2006, as a Firefighter/Paramedic. My supervisor was Wayne Osborne. I have previously filed EEOC Charges of Discrimination (485-2016-00263, 485-2016-00370, and 485-2016-00506). My job requires that I maintain an active state license and local accreditation. My local accreditation was due for renewal on January 31, 2017. I completed the renewal of my local accreditation on or about February 16, 2017. Shortly thereafter, Chief Tim Ray informed me that they received notice of the lapse in my accreditation. I understand that the department hired an outside party to investigate the issue. I continued to work during the investigation. In late April 2017, I was placed on paid administrative leave. On or about May 12, I met with Chief Ray and Alex Henderson. I was discharged on May 12. I understand that no other firefighter/paramedic has been discharged or disciplined for a similar lapse in accreditation. I understand that the state Authority declined to discipline me for the lapse in my accreditation.

Both the EEOC and DFEH issued right to sue letters for Charge Number 485-2017-00383. Doc. 7-1, Ex. A. Neither side has given any further information about Charge Numbers 485-2016-00370 and 485-2016-00506.

Franklin states "the EEOC Settlement Agreement only applies, in relevant part, to bringing a lawsuit pursuant to Title VII 'based on EEOC Charge Number 485-2016-00263.' However, Franklin is not bringing a Title VII lawsuit on that charge. His Title VII lawsuit is based on the claim, and the concomitant right to sue, outlined in EEOC Charge Number 485-2016-00383." Doc. 7, 13:17-21. Similarly, Franklin appears to be bringing his FEHA claims pursuant to EEOC Charge Number 485-2016-00383. See Doc. 7, 11:25-28.

Thus, Franklin's Title VII and FEHA claims are limited to allegations that either fell within the scope of the EEOC's actual investigation of Charge Number 485-2016-00383 or an EEOC investigation which could reasonably be expected to have grown out of that charge. In EEOC Charge Number 485-2016-00383, Franklin alleges retaliation only, not racial discrimination or harassment. The facts of the present case are analogous to those of <u>Wright v. United Airlines, Inc.</u>, 1992 U.S. Dist. LEXIS 3659 (N.D. Cal. Mar. 2, 1992). In <u>Wright</u>, the plaintiff filed a first EEOC charge alleging racial harassment. After voluntarily withdrawing the charge, the plaintiff was given a reprimand. He filed a second EEOC charge alleging his employer retaliated against him for filing the first EEOC charge. At summary judgment, the racial discrimination claim was dismissed: "Because the EEOC would have no cause to investigate racial discrimination while investigating a charge alleging only retaliation, the allegations of racial discrimination contained in Wright's Complaint are outside the scope of his second charge." <u>Wright v. United Airlines, Inc.</u>, 1992 U.S. Dist. LEXIS 3659, at *11 (N.D. Cal. Mar. 2, 1992), reversed on other grounds at 1993 U.S. App. LEXIS 16274 (9th Cir. 1993); see also <u>Cohen v. Clark Cty. Sch. Dist.</u>, 2012 U.S. Dist. LEXIS 84457, *11-13 (D. Nev. June 19, 2012) (a charge of retaliation did not encompass gender discrimination even though the plaintiff wrote on the charge form "Respondent is retaliating against me because I filed a previous charge of discrimination against them"). Franklin has not provided any documentation that the actual investigation covered claims of racial discrimination and harassment.

Franklin's Title VII and FEHA claims are only administratively exhausted as to the retaliation claims contained in EEOC Charge Number 485-2016-00383; the racial discrimination, harassment, and any earlier retaliation claims have not been exhausted, depriving this court of jurisdiction to consider them. Further, there is the question of whether those claims would be covered by the release of rights contained in the Settlement Agreement. To be clear, Plaintiff's employment discrimination claims are limited to theories of retaliation covered by EEOC Charge Number 485-2016-00383. Causes of action one, two, and five are dismissed for lack of subject

1    matter jurisdiction.  There is jurisdiction to consider causes of action three, four,[2] and six.

2

3    **2. Elements of Retaliation**

4         Under Title VII, "To make out a prima facie case of retaliation, an employee must show

5    that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse

6    employment action; and (3) a causal link exists between the protected activity and the adverse

7    action." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Similarly, under FEHA "a

8    plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the

9    employee to an adverse employment action, and (3) a causal link existed between the protected

10   activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (Cal.

11   2005).  Defendants agree that Franklin's 2017 discharge was an adverse employment action that

12   was not time barred. Doc. 9, 6:6-7.  For Title VII, "Termination of employment 'certainly

13   constitutes an adverse employment action.'" Pinder v. Emp't Dev. Dep't, 227 F. Supp. 3d 1123,

14   1139 (E.D. Cal. 2017), quoting Aragon v. Republic Silver State Disposal, 292 F.3d 654, 660 (9th

15   Cir. 2002).  Franklin has adequately stated a claim for retaliation.

16

17   **B. Section 1981 – Cause of Action Seven**

18        "All persons within the jurisdiction of the United States shall have the same right in every

19   State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full

20   and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed

21   by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and

22   exactions of every kind, and to no other." 42 U.S.C. § 1981(a).  Defendants assert that "in

23   California, public employment is held be statute not contract. As such, public employees in

24   California cannot allege a Section 1981 claim against their public employers because Section 1981

25   only deals with interference with contractual rights." Doc. 6-1, 14:7-10, citations omitted.  The

26   _____

27   [2] Cause of action four is "failure to provide a harassment/retaliation/discrimination free work environment." Doc. 1,
     10:17.  The statutory language only prohibits the "fail[ure] to take all reasonable steps necessary to prevent
     **discrimination** and **harassment** from occurring." Cal. Gov. Code § 12940(k), emphasis added.  Case law has

28   elaborated that "Retaliation is included within the meaning of 'discrimination' for purposes of § 12940(k)." Rubadeau
     v. M.A. Mortenson Co., 2013 U.S. Dist. LEXIS 93928, *40 (E.D. Cal. July 2, 2013).

Ninth Circuit has recently ruled on the issue: "we hold—in a matter of first impression—that California law should not be read to bar public employees from bringing section 1981 claims [against their employer]." Flores v. City of Westminster, 873 F.3d 739, 752 (9th Cir. 2017). As a general matter, "§ 1981 encompasses retaliation and hostile work environment claims." Manatt v. Bank of Am., 339 F.3d 792, 795 (9th Cir. 2003). Franklin may proceed on his claim.

**C. Section 1983 – Cause of Action Eight**

Franklin alleges that Defendants retaliated against him:

7. At a meeting on September 18, 2015, FRANKLIN stated that he wanted to receive training in the care, testing, maintenance and servicing of SCBA equipment. FRANKLIN reported that the cost of the class would be $400 and that the Department could save $4,000 in maintenance costs if he took the course and that the Department would not have to pay for his lodging during the class since he would stay with his family. FRANKLIN also said that COK could not guarantee the safety of SCBA units without having someone receive such training. After making this suggestion, Defendant Fire Chief RAY yelled at him for making the suggestion indicating there was no money in the budget….

8. On October 5, 2015, FRANKLIN followed up on his recommendation with an email to Chief RAY, the City Manager and the COK Safety Council. FRANKLIN's email reiterated that authorization of the training was a matter of firefighter and public safety.

….

10. In the middle of October of 2015, FRANKLIN was called into a meeting with Captain Bob McGee. McGee said that Chief RAY and the City Manager were upset about the email he had written and that they wanted him disciplined for 'jumping the chain of command.' When FRANKLIN's union representative pointed out that a write-up on that ground for addressing a safety concern was not permitted, Captain McGee said that he had been told to discipline FRANKLIN.

….

70. FRANKLIN engaged in speech and conduct protected by the First Amendment by sending a communication to the KOC safety commission about public safety and firefighter safety. KOC and Chief RAY and City Manager Alexander Henderson defined this communication as insubordination and opposition to their authority and began a course of retaliation culminating [in] the termination of FRANKLIN in March 2018.

Doc. 1, 2:27-3:22 and 16:1-6.

**1. Elements of the Claim**

A First Amendment free speech violation requires five elements: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). Defendants argue Franklin has not plead the first two elements of this cause of action.

"[T]he public concern inquiry is purely a question of law" Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community. But speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies' is generally not of public concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), citations and quotations omitted. In general, "equipment, safety issues, the need for training, and the possibility of misuse of funds" qualify as topics of public concern. Hutton v. City of Fairbanks, 2011 U.S. Dist. LEXIS 163351, *6 (D. Alaska Feb. 9, 2011). Franklin's email about SCBA training covers a topic of public concern.

The second element is whether employee was speaking as a private citizen or a public employee. "[T]he First Amendment does not protect employee speech when that speech is 'pursuant to…official duties.'" Dahlia v. Rodriguez, 735 F.3d 1060, 1068 (9th Cir. 2013), quoting Garcetti v. Ceballos, 547 U.S. 410, 414 (2006). "First, particularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties. When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is

speaking pursuant to his duties….Second, the subject matter of the communication is also of course highly relevant to the ultimate determination whether the speech is protected by the First Amendment….Third, we conclude that when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." Dahlia v. Rodriguez, 735 F.3d 1060, 1074-75 (9th Cir. 2013). "[T]he determination whether the speech in question was spoken as a public employee or a private citizen presents a mixed question of fact and law." Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1129 (9th Cir. 2008).

Defendants assert that Franklin "only made [the] request to people in his chain of command – Chief Ray and [City Manager] Mr. Henderson. He did not make any alleged safety complaints to the City or outside the City." Doc. 6-1, 17:2-3. In opposition, Franklin states that he made a report "outside of the fire department to the City Manager and to the Safety Council" which reflect the allegations of the complaint. Doc. 7, 16:18-20. Defendants make no response in their reply. See Doc. 9. Due to the disagreement of the parties, it is ambiguous whether Franklin did in fact contact persons outside of his chain of command. More factual information about the structure of the Kingsburg Fire Department is needed.

Regarding the subject matter of the communication, "a public employee speaks as a private citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform. While the question of the scope and content of a plaintiff's job responsibilities is a question of fact, the ultimate constitutional significance of the facts as found is a question of law." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1058 (9th Cir. 2013), citations and quotations omitted. For example, when an employee's "primary responsibilities included ensuring that record requests from the public were routed to the appropriate records custodian and responded to in a timely manner, reviewing the documents released, and preventing the disclosure of confidential information," communication concerning "obstacles interfering with her ability to produce records — is not protected." Handy-Clay v. City of Memphis, 695 F.3d 531, 541 (6th Cir. 2012). This reflects the conclusion that "Restricting speech that owes its existence to a public employee's professional

11

responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006). In this case, Plaintiff acknowledges that "prior to September of 2015, FRANKLIN had been tasked with responsibility for the [SCBA] used by COK firefighters." Doc. 1, 7:20-21. Additionally, there are no allegations that Plaintiff was directly ordered not to speak with others about his SCBA concerns. These factors tend to support a conclusion that Plaintiff was speaking as a public employee.

Taken altogether, the factors are mixed given the facts known at present. Ninth Circuit precedent strongly distinguishes between communication within the chain of command and those that are clearly outside of it. In a case where a prison guard reported sexually abusive behavior by inmates (within the scope of her job duties), the guard was found to have been acting as a public employee in making "internal reports of sexual misconduct" but as a private citizen in raising those same issues in communications with the California Inspector General and a California State Senator. Freitag v. Ayers, 468 F.3d 528, 546 (9th Cir. 2006). The Ninth Circuit further remanded the case to the district court to determine how to characterize communication with the Director of the CDCR as the record was not completely clear as to "whether prison guards are expected to air complaints regarding the conditions in their prisons all the way up to the Director of the CDCR at the state capitol in Sacramento." Id. In this case, Plaintiff has described who he contacted and asserts that those people were outside his chain of command. At this stage of litigation, that is sufficient to state a claim.

**2. Qualified Immunity**

Defendants also assert that qualified immunity should apply to Ray: "Chief Ray simply denied Plaintiff's request for additional training due to budget issues and advised Plaintiff to adhere to the chain of command….There is no clearly established law that public employees should not be disciplined for misconduct, should not be required to follow policies, or should not be provided training that an employer deems unnecessary or too costly." Doc. 6-1, 17:25-18:8. A

person acting under color of law "'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent…placed the statutory or constitutional question beyond debate.' This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" City & Cty. of S.F. v. Sheehan, 135 S. Ct. 1765, 1774 (2015), quoting Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014) and Ashcroft v. al-Kidd, 563 U.S. 731, 741 and 743 (2011). In this case, Plaintiff disagrees that he was legitimately disciplined for misconduct and asserts that he communicated outside the chain of command. There is ample case law in the Ninth Circuit that makes the legal contours of retaliation against a public employee for raising concerns of public safety clear. See, e.g. Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121 (9th Cir. 2008); Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003). Plaintiff's allegations in the complaint fit within those bounds. Qualified immunity is denied at this time.

**3. Statute of Limitations**

Defendants argue that Franklin's claim is barred by the statute of limitations. "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). California's applicable limitations period is "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." Cal. Civ. Proc. Code § 335.1. Plaintiff filed his complaint on March 26, 2018 but key events (his communication about the SCBA gear and the threat of discipline) took place more than two years earlier in September and October 2015. Under federal law, "Discrete employment actions are not subject to the continuing violations doctrine." Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1175 (E.D. Cal. 2005), citing AMTRAK v. Morgan, 536 U.S. 101, 114 (2002); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (applying

Morgan to Section 1983 claim).  However, Defendants acknowledge that Franklin's 2017 discharge is not time barred. See Doc. 9, 6:6-7.  The timing of other employment actions is not clear from the complaint.

**D. Preclusion**

After being informed that Chief Ray intended to discharge him, Franklin first challenged that decision through some form of civil service administrative process.  The parties have not provided detail about the governing law that enables this process; it is presumably a part of the civil service system.  In the complaint, Franklin states:

> 24. On April 12, 2017, KOC served a Notice of Intent to Discipline – Termination on FRANKLIN. This notice advised FRANKLIN of Chief RAY's decision to terminate FRANKLIN.
>
> 25. FRANKLIN pursued his rights to an Administrative Hearing. On or about December 27, 2017, the Administrative Law Judge ('ALJ') granted FRANKLIN's appeal from the decision to terminate and ordered his reinstatement.
>
> 26. In or about March 2018, COK rejected the ALJ decision.
>
> 27. In or about March of 2018, FRANKLIN's termination from employment with the COK became final.

Doc. 1, 6:16-21.  In briefing for this motion, Defendants have clarified that it was the Kingsburg City Council which rejected the ALJ decision and upheld the termination. See Doc. 6-1, 6:23-24. Franklin has provided copies of the ALJ decision and the Kingsburg City Council decision. See Doc. 7-1, Exs. C and D.  The Kingsburg City Council found that "Based upon appellant's discipline history, appellant's lapse of accreditation and the failure to report this to the City, the Chief and Mr. Henderson determined appellant's misconduct was likely to be repeated, which could bring harm to the City, and, thus given the totality of circumstances, termination was the appropriate discipline." Doc. 7-1, Ex. D, page 15.  Under California law, "A party must exhaust judicial remedies by filing a § 1094.5 petition, the exclusive and established process for judicial review of an agency decision." Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1155 (9th Cir. 2018), quotations omitted.  Franklin did not file a Section 1094.5 petition.  Instead, Franklin filed the present suit in Fresno County Superior Court a day or two before the Kingsburg City Council

issued their decision. Defendants argue that the Kingsburg City Council decision has preclusive effect on this case because Franklin did not seek judicial review of that decision. Doc. 6-1, 6:19-26. By not taking that step, Defendants argue that the Kingsburg City Council decision became final and he "cannot allege that he suffered a legally actionable adverse employment action based on his termination to support retaliation or discrimination claims." Doc. 6-1, 7:11-13.[3]

"The records and judicial proceedings of any court of any such State, Territory or Possession....shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Though Section 1738 does not apply to administrative decisions that have not been reviewed by a court, "we have frequently fashioned federal common-law rules of preclusion in the absence of a governing statute....Accordingly, we hold that when a state agency 'acting in a judicial capacity...resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 795 and 799 (1986), quoting United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966). Preclusion "extend[s] to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in Utah Construction." Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 758 (9th Cir. 1988). State and municipal administrative determinations are held to the same standard. Eilrich v. Remas, 839 F.2d 630, 633 (9th Cir. 1988). "The fairness requirements of Utah Construction are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1033 (9th Cir. 1994). It is

---

[3] "While affirmative defenses may not be raised in a motion to dismiss, res judicata may be asserted in a motion to dismiss when doing so does not raise any disputed issues of fact." Garavito v. JPMorgan Chase Bank, N.A., 2015 U.S. Dist. LEXIS 192374,*12 (C.D. Cal. Jan. 16, 2015), citing Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).

well established that "California has adopted the <u>Utah Construction</u> standard, [therefore] we give preclusive effect to a state administrative decision if the California courts would do so." <u>Doe v. Regents of the Univ. of Cal.</u>, 891 F.3d 1147, 1155 (9th Cir. 2018).

As a general matter under California law, "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions. This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. Exhaustion of judicial remedies, on the other hand, is necessary to avoid giving binding effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action." <u>Johnson v. City of Loma Linda</u>, 24 Cal. 4th 61, 70-71 (Cal. 2000), quotations omitted. If a party has not challenged an agency's findings by means of a mandate action and wishes to challenge that finding's preclusive effect in the later civil action, "The California Supreme Court has established a two-part test to evaluate the preclusive effect to accord administrative agency determinations. The first part of the <u>Sims</u> test employs the standard the United States Supreme Court set out in <u>Utah Construction</u>: collateral estoppel should be applied 'when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' The second part entails traditional collateral estoppel criteria, barring relitigation of an issue if: '(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" <u>Eilrich v. Remas</u>, 839 F.2d 630, 633 (9th Cir. 1988), quoting <u>People v. Sims</u>, 32 Cal. 3d 468, 479 and 484 (Cal. 1982). "The party asserting collateral estoppel bears the burden of establishing these requirements." <u>Lucido v. Superior Court</u>, 51 Cal. 3d 335, 341 (Cal. 1990).

Defendants concede that this state requirement for exhaustion of judicial remedies does not apply to Title VII claims. Doc. 9, 2:12-18. But, "as a matter of federal common law, federal

courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983." Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994), citing Tennessee v. Elliott, 478 U.S. 788, 797-99 (1986). An administrative decision can also have preclusive effect against a 42 U.S.C. § 1981 cause of action. See Plymale v. Dyer, 837 F. Supp. 2d 1077, 1089 (E.D. Cal. 2011); Harvey v. City of San Diego, 2011 U.S. Dist. LEXIS 23012, *10 (S.D. Cal. Mar. 8, 2011). This analysis of preclusion is directed at the FEHA, Section 1981 and Section 1983 causes of action.

The first part of the Utah Construction standard is the question of "judicial capacity." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966). California applies this requirement as follows: "For an administrative decision to have collateral estoppel effect, it and its prior proceedings must possess a judicial character. Indicia of proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." Pac. Lumber Co. v. State Water Res. Control Bd., 37 Cal. 4th 921, 944 (Cal. 2006), citations omitted.

Franklin argues that the state administrative proceedings should not be given preclusive effect as "the City Council's decision to reverse the ALJ decision was not quasi-judicial. For example, the City Council's decision was not made by an impartial decision-maker. To the contrary, the City Council was biased insofar as Franklin had named Kingsburg in both the DLSE and EEOC proceedings and in the present complaint." Doc.7, 8:27-9:2. Franklin appears to be arguing that because Kingsburg was a party to the case, the Kingsburg City Council can never be considered impartial. This line of reasoning has not been accepted by California courts: "According to Basurto, the District Board can never be impartial in deciding an employee's grievance when a decision in favor of the employee could result in a substantial financial penalty to the District, in the form of backpay, future wages, benefits, and attorney fees. We disagree. If Basurto were correct, then no administrative agency could ever adjudicate employee disputes that might result in the agency's liability and financial compensation to the employee. Yet, statutory

and case law long have recognized the ability of an agency to internally adjudicate employment and other matters, even where a result favorable to the other party may result in a financial gain for that party and a loss for the agency (or the public fisc)….We also conclude that Basurto has failed to present any evidence that the board in fact was biased in this case." Basurto v. Imperial Irrigation Dist., 211 Cal. App. 4th 866, 885-86 (Cal. App 4th Dist. 2012). In this case, Franklin has not established a lack of judicial capacity but should be given an opportunity to present evidence of bias.

Additionally, Franklin argues that he is excused from having to challenge the administrative decision. Franklin points out that California state courts have recently "concluded that persons filing damage suits authorized by certain whistleblower statutes—laws forbidding employer retaliation against workers who have reported fraud, danger, corruption, waste, or malfeasance—did not have to exhaust available administrative and mandamus remedies before seeking relief in court." Fahlen v. Sutter Cent. Valley Hosps., 58 Cal. 4th 655, 660 (Cal. 2014), citations omitted. This exception has been applied to whistleblower claims based on Cal. Health & Safety Code § 1278.5, Cal. Lab. Code § 1102.5, Cal. Gov't Code § 12653, Cal. Gov't Code § 8547.12., and Cal. Gov't Code § 8547.8. See Fahlen v. Sutter Cent. Valley Hosps., 58 Cal. 4th 655, 660 (Cal. 2014); Taswell v. Regents of Univ. of Cal., 23 Cal. App. 5th 343, 362 (Cal. App. 4th Dist. 2018); Runyon v. Bd. of Trs. of Cal. State Univ., 48 Cal. 4th 760, 763 (Cal. 2010); State Bd. of Chiropractic Exam'rs v. Superior Court, 45 Cal. 4th 963, 978 (Cal. 2009). This is an exception to the requirement of judicial exhaustion. Franklin argues that this reasoning should be extended to retaliation claims under Cal. Gov't Code § 12940. Doc. 7, 10:21-11:15. Defendants argue they "are not aware of a single decision since Fahlen was decided in 2014 that has extended its application to FEHA claims. This Court should not be the first." Doc. 9, 5:13-15.

Franklin pushes for a significant expansion of the exception. The California courts have only applied the exception thus far to whistleblower laws that were put in place to permit persons to freely raise concerns to protect the public. See Fahlen v. Sutter Cent. Valley Hosps., 58 Cal. 4th 655, 661 (Cal. 2014) (Section 1278.5 promotes "policy of encouraging workers in a health care facility, including members of a hospital's medical staff, to report unsafe patient care"); Taswell v.

1 <u>Regents of Univ. of Cal.</u>, 23 Cal. App. 5th 343, 352 (Cal. App. 4th Dist. 2018) (Sections 8547.8

2 and 8547.12 cover government employees and promote disclosure of "improper governmental

3 activities" and "health and safety problems").  While FEHA retaliation law might be described as

4 having a similar public policy basis as the whistleblowing statutes, it is not the exact same

5 underlying concern.  This court declines to extend the exception to FEHA on first impression but

6 awaits further development of the case law from California courts.

7      Franklin also argues that Defendants have not met their burden of establishing all the

8 collateral estoppel requirements. Doc. 7, 11:15-22.  Again, "The California Supreme Court has

9 established a two-part test to evaluate the preclusive effect to accord administrative agency

10 determinations. The first part of the <u>Sims</u> test employs the standard the United States Supreme

11 Court set out in <u>Utah Construction</u>: collateral estoppel should be applied 'when an administrative

12 agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which

13 the parties have had an adequate opportunity to litigate.' The second part entails traditional

14 collateral estoppel criteria, barring relitigation of an issue if: '(1) the issue necessarily decided at

15 the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous

16 [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral

17 estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" <u>Eilrich v.</u>

18 <u>Remas</u>, 839 F.2d 630, 633 (9th Cir. 1988), quoting <u>People v. Sims</u>, 32 Cal. 3d 468, 479 and 484

19 (Cal. 1982).  In a case with analogous facts, the California Supreme Court found "when, as here, a

20 public employee pursues administrative civil service remedies, receives an adverse finding, and

21 fails to have the finding set aside through judicial review procedures, the adverse finding is

22 binding on discrimination claims under the FEHA." <u>Johnson v. City of Loma Linda</u>, 24 Cal. 4th

23 61, 76 (Cal. 2000).  However, the record for this motion is incomplete and there may be factual

24 disputes concerning the state administrative proceeding.  Defendants have not explained in any

25 detail how each of these requirements are met.

26      At this stage of the litigation, the administrative proceeding will not be given preclusive

27 effect.  The issue may be raised at a later time, but the parties are warned that more thorough

28 briefing is necessary to resolve this question.

**E. Amended Complaint**

As part of his opposition, Franklin attached a proposed amended complaint that he seeks to file "In the event that the Court is inclined to grant any portion of the Motion." Doc. 7, 17-18. In this proposed amended complaint, Franklin adds additional causes of action and changes the theory behind some of his existing causes of action. See Doc. 7-1, Ex. B. The court declines to permit the filing of an amended complaint this time. If after consideration of this order Franklin still wishes to amend his complaint, he must file a formal motion seeking leave to amend.

### IV. Order

Defendants' motion to dismiss is GRANTED in part and DENIED in part. Causes of action one, two, and five are DISMISSED for lack of administrative exhaustion.

IT IS SO ORDERED.

Dated:  July 10, 2019

_____

SENIOR DISTRICT JUDGE