# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VERNON FRANKLIN,**<br><br>    **Plaintiff**<br><br>    v.<br><br>**CITY OF KINGSBURG; TIM RAY; and DOES 1 through 20 inclusive**<br><br>    **Defendants** | **CASE NO. 1:18-CV-0824 AWI SKO**<br><br>**ORDER RE: MOTION TO DISMISS** |

## I. Background

Plaintiff Vernon Franklin was a firefighter/EMT with the Kingsburg City Fire Department between 2006 and 2017. Franklin was the first and only African American member of the Fire Department. Tim Ray was the Fire Chief at the time. Defendants are Chief Ray and the City of Kingsburg.

In 2014, Franklin got into an altercation with a white co-worker. Franklin was written up while the co-worker was not. At an unspecified time in the past, Franklin had also been written up for unsafe driving and put on six-month paid leave while the incident was investigated. Franklin was responsible in part for maintaining self-contained breathing apparatus ("SCBA") equipment used by the Fire Department. In September 2015, Franklin asked Chief Ray if he could take a course on SCBA maintenance he thought was necessary for ensuring their safe use. Chief Ray denied the request. Franklin then e-mailed his request to Chief Ray, City Manager Alex Henderson, and the City of Kingsburg Safety Council. Franklin's supervisor, Captain Bob McGee, told Franklin in October that Chief Ray and the City Manager were upset with his e-mail and that he would consequently be punished. With reference to his prior write ups, Franklin was

given two 48-hour shift suspension and required to comply with a Performance Improvement Plan ("PIP").

Franklin then filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). After mediation, Franklin and the Fire Department came to a formal settlement agreement. Franklin agreed to comply with two 6-month PIPs in return for pay withheld due to his suspension and a release of all prior other claims up to that point. In October 2016, Franklin and Chief Ray argued about Franklin's PIP.

In early 2017, Franklin's EMT accreditation with the Central California Emergency Medical Services Agency lapsed. Paramedics with the Fire Department are required to maintain that accreditation. Franklin corrected the problem; he was without accreditation for two weeks. The Fire Department then started proceedings to end Franklin's employment. He was formally dismissed on May 12, 2017. Franklin challenged his dismissal through a civil service administrative process ("Administrative Process"). Though the administrative law judge ("ALJ") found in favor of Franklin, issuing a proposed decision that he not be fired, the Kingsburg City Council ("City Council") rejected that conclusion and affirmed Franklin's dismissal ("Administrative Decision"). Additionally, Franklin filed a new EEOC complaint in August 2017; Franklin thereafter received a right to sue letter.

On March 26, 2018, Franklin filed suit in the Superior Court of California, County of Fresno against Defendants City of Kingsburg and Chief Ray on eight causes of action: 1) discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), 2) harassment in violation of FEHA, 3) retaliation in violation of FEHA, 4) failure to provide a harassment/retaliation/discrimination free work environment in violation of FEHA, 5) discrimination in violation of 42 U.S.C. § 2000e ("Title VII"), 6) retaliation in violation of Title VII, 7) violation of 42 U.S.C. § 1981, and 8) violation of 42 U.S.C. § 1983. Doc. 1, Complaint. Defendants removed the case and filed a motion to dismiss all eight causes of action. Doc. 6. As part of the briefing, Franklin filed a Proposed First Amended Complaint that added two additional claims: 9) retaliation for disclosing information to government or law enforcement in violation of Cal. Lab. Code § 1102.5, and 10) invasion of privacy. Doc. 7-1, Ex. B. The Defendants' motion

was granted in part and denied in part; causes of action one, two, and five were dismissed for lack of administrative exhaustion. Doc. 18.  The request to file the Proposed Amended Complaint was denied as it did not conform to the ruling, but Franklin was directed to file a formal motion to seek leave to amend. Doc. 18, 20:2-8.

Instead, the parties stipulated to the filing of an amended complaint and the stipulation was approved. Docs. 20 and 21.  The First Amended Complaint listed ten causes of action: 1) discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), 2) harassment in violation of FEHA, 3) retaliation in violation of FEHA, 4) failure to provide a harassment/retaliation/discrimination free work environment in violation of FEHA, 5) discrimination in violation of 42 U.S.C. § 2000e ("Title VII"), 6) retaliation in violation of Title VII, 7) violation of 42 U.S.C. § 1981, 8) violation of 42 U.S.C. § 1983, 9) retaliation for disclosing information to government or law enforcement in violation of Cal. Lab. Code § 1102.5, and 10) invasion of privacy. Doc. 22.  Defendants filed a second motion to dismiss. Doc. 24.  Franklin clarified that the first, second, and fifth causes of action were included in error as their inclusion was not consistent with the ruling on the prior motion to dismiss and agreed to their dismissal. Doc. 26, 1:2-3.  As part of this motion, Defendants asked for abstention under the Younger doctrine. Doc. 24-1, 3:2-10.  The case was stayed pending final resolution of the state Administrative Process. Doc. 32.  Franklin filed an acknowledgment that any further process in the Administrative Proceeding would be futile. Doc. 37-1.  The stay was lifted. Doc. 42.

Defendants have now filed a third motion to dismiss. Doc. 43.  Defendants' motion addresses the third, fourth, seventh, eighth, ninth, and tenth causes of action.  Defendants are silent as to the sixth cause of action, retaliation under Title VII.  Franklin opposes the motion. Doc. 45.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v.

3

Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).  However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. Mueller v. Aulker, 700 F.3d

4

1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## III. Discussion

**A. Judicial Exhaustion**

Defendants argue that the failure to exhaust judicial remedies bars the third, fourth, seventh, and eighth causes of action. Doc. 43-1, 18:17-18. These constitute the FEHA, Section 1981, and Section 1983 causes of action.

After his dismissal by the Fire Department, Franklin first challenged that decision through the Administrative Process which was governed by Cal. Gov. Code § 11517(c). The Administrative Decision ruled in favor of Defendants, affirming the dismissal. Franklin then had the option of seeking reconsideration (Cal Gov. Code § 11521) or judicial review (Cal. Gov. Code § 11523). The means of seeking judicial review is a writ of mandate: "A party must exhaust judicial remedies by filing a [Cal. Civ. Proc. Code] § 1094.5 petition, the exclusive and established process for judicial review of an agency decision." Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1155 (9th Cir. 2018), quotations omitted. Franklin did not seek reconsideration or file a Section 1094.5 petition for mandate. Instead, Franklin filed the present suit in Fresno County Superior Court which alleged state and federal causes of action but did not request a writ under Section 1094.5.

As a general matter under California law, "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions. This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. Exhaustion of judicial remedies, on the other hand, is necessary to avoid giving binding effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action." Johnson v. City of Loma Linda, 24 Cal. 4th 61, 70-71 (Cal. 2000), quotations omitted. If a party has not challenged an agency's findings by means of a mandate action and wishes to

5

challenge that finding's preclusive effect in the later civil action, "The California Supreme Court has established a two-part test to evaluate the preclusive effect to accord administrative agency determinations. The first part of the Sims test employs the standard the United States Supreme Court set out in Utah Construction [United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966)]: collateral estoppel should be applied 'when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' The second part entails traditional collateral estoppel criteria, barring relitigation of an issue if: '(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" Eilrich v. Remas, 839 F.2d 630, 633 (9th Cir. 1988), quoting People v. Sims, 32 Cal. 3d 468, 479 and 484 (Cal. 1982).  Additionally, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  "The party asserting collateral estoppel bears the burden of establishing these requirements." Lucido v. Superior Court, 51 Cal. 3d 335, 341 (Cal. 1990).  Preclusion "extend[s] to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in Utah Construction." Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 758 (9th Cir. 1988).

    Franklin has not challenged the Administrative Decision through appeal.  Instead, he is challenging its preclusive effect.  Thus, the analysis goes through the two steps set out in Sims: the Utah Construction test and the res judicata/collateral estoppel test.

**1. Utah Construction**

    "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. &

6

Mining Co., 384 U.S. 394, 422 (1966). "The fairness requirements of Utah Construction are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1033 (9th Cir. 1994).

Defendants assert that the second and third prongs are satisfied and Franklin makes no challenge to those assertions. Regarding the first prong, Defendants argue that in the Administrative Process "(1) Plaintiff was represented by counsel the entire time; (2) he was allowed to introduce documentary evidence and witnesses; (3) Plaintiff admits the ALJ was a neutral decision-maker; (4) the City Council considered hearing transcripts, witness evidence, and further briefing from the Parties; and (5) both the ALJ and the City Council issued detailed written opinions." Doc. 43-1, 16:19-24. Franklin's objection is to the participation of the City Council:

> The first proceeding was the ALJ proceeding which found in favor of Franklin. That proceeding had a neutral ALJ who heard live witnesses who were called and cross-examined in a court-like setting. Franklin prevailed in that proceeding.
>
> The second proceeding occurred when the City Council reversed the ALJ's decision. That proceeding did not involve them listening to live testimony. It was also not in front of a neutral trier of fact as in the case of the ALJ proceeding. Certainly, the City Council could read the transcripts, but it is a truism in law that the trier of fact who hears the witness is in a better position to make credibility than the court of appeal that bases its decision on the transcript. That is why the legal system has rules of deference to the trial judge as the determiner of credibility.
>
> The City Council reversal of the ALJ decision, did not have the "essential procedural characteristics of a court" as required by federal law to accord that decision with the same finality as a court judgment.

Doc. 45, 9:15-27.

From what can be gathered in the record,[1] the ALJ held hearings on September 20 and 21, 2017 and then issued a proposed decision. Doc. 43-2, Ex. F. The City Council then informed Franklin of its intent to "reject the Proposed Decision and [] decide the case upon the record,

---

[1] Defendants have requested judicial notice of a number of documents. Doc.43-2. Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017). The documents Defendants have proffered qualify for judicial notice.

7

including the hearing transcripts in the above-referenced matter, pursuant to Government Code § 11517(c)(2)(E)." Doc. 43-2, Ex. G.  Additionally, the City Council stated:

> a hearing shall be held by the Kingsburg City Council on the above referenced matter on March 13, 2018, at 5:30 p.m., pursuant to Government Code §11517(c)(2)(E). Said hearing shall take place at the City of Kingsburg, before the City Council, located at 1401 Draper Street, Kingsburg, California 93631. Each party shall have the opportunity to provide oral argument before the City Council, with each party's argument time is limited to 40 minutes. Appellant may reserve no more than 10 minutes of his 40-minute argument time for rebuttal.
>
> Copies of the full record, which include the hearing transcripts, the evidence or exhibits submitted by the parties, party briefing, and the proposed decision, which has or will be provided to the City Council, will be made available to Appellant upon request.
>
> Appellant may request the hearing be open or closed to the public,

Doc. 43-2. Ex. H.  Section 11517 states in relevant part:

> (2) Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may act as prescribed in subparagraphs (A) to (E)
>
> ….
>
> (E) Reject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence. By stipulation of the parties, the agency may decide the case upon the record without including the transcript. If the agency acts pursuant to this subparagraph, all of the following provisions apply:
> > (i) A copy of the record shall be made available to the parties. The agency may require payment of fees covering direct costs of making the copy.
> > (ii) The agency itself shall not decide any case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself, no agency member may vote unless the member heard the additional oral evidence.
> > (iii) The authority of the agency itself to decide the case under this subdivision includes authority to decide some but not all issues in the case.
> > (iv) If the agency elects to proceed under this subparagraph, the agency shall issue its final decision not later than 100 days after rejection of the proposed decision. If the agency elects to proceed under this subparagraph, and has ordered a transcript of the proceedings before the administrative law judge, the agency shall issue its final decision not later than 100 days after receipt of the transcript. If the agency finds that a further delay is required by special circumstance, it shall issue an order delaying the decision for no more than 30 days and specifying the reasons therefor. The order shall be subject to judicial review pursuant to Section 11523.

Cal. Gov. Code § 11517(c)(2).

Preliminarily, Franklin suggests that the proceedings before the ALJ should be excluded

8

because the proposed decision was rejected by the City Council. Doc. 45, 10:9-11 ("The administrative decision in the present case is the City Council's reversal of the ALJ decision, not the ALJ decision, and that proceeding clearly did not have the features of a trial."). The main case Franklin cites to for the overall standard of judicial capacity under Utah Construction is Imen v. Glassford (Doc. 45, 9:3-10) which states: "In determining whether the agency had acted in a 'judicial capacity' the court must consider the presence of 'factors indicating that the administrative proceedings and determination possessed a "'judicial' character."' These factors include whether (1) the administrative hearing was conducted in a judicial-like adversary proceeding; (2) the proceedings required witnesses to testify under oath; (3) the agency determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the administrative agency maintained a verbatim record of the proceedings. Additional factors include whether the hearing officer's decision was adjudicatory and in writing with a statement of reasons. Finally, was that reasoned decision adopted by the director of the agency with the potential for later judicial review." Imen v. Glassford, 201 Cal. App. 3d 898, 906-07 (Cal. App. 4th Dist. 1988). In Imen, the court noted that "After the hearing the administrative law judge makes recommendations to the commissioner who may accept or reject them. (Gov. Code, § 11517…" Imen v. Glassford, 201 Cal. App. 3d 898, 907 (Cal. App. 4th Dist. 1988). This is the same Section 11517 procedure that the City Council in this case used to reject the ALJ's proposed decision. The wording of Imen indicates that the proceedings before the ALJ are to be considered for determining judicial capacity even though the proposed decision may ultimately be rejected. There is some case law which does suggest that a proposed decision that is not binding in any way should not be given weight in considering preclusive effect. See Eaton v. Siemens, 2007 U.S. Dist. LEXIS 37508, *17-19 (E.D. Cal. May 23, 2007) (in Utah Construction analysis, "the arbitrator did not adjudicate the parties' rights and issue a binding decision on them. Instead, the arbitrator provided only an 'advisory decision,' a recommendation, to the City Manager for his use in deciding plaintiff's appeal….As such, the final decision as to plaintiff's termination lay solely in the City Manager,

9

1  who had the unilateral authority to render any decision he saw fit….While he could, as he did
2  here, choose to accept the arbitrator's decision and findings, significantly, he could choose to
3  ignore them in full and render his decision for wholly other reasons. As a result, defendants'
4  argument, in their reply, that the process was 'judicial' because the City Manager based his
5  decision on the arbitrator's findings of fact is unavailing."); cf. Kifle-Thompson v. State Bd.of
6  Chiropractic Exam'rs, 208 Cal. App. 4th 518, 531 (Cal. App. 1st Dist. 2012) (on appeal by petition
7  of writ, "The ALJ's order of dismissal was a proposed order, and one the Board was entitled by
8  statute to 'undo.' Once the Board determined not to adopt the proposed decision, that decision
9  served no 'identifiable function in the administrative adjudication process or, for that matter, in
10 connection with the judicial review' of that process."). However, those authorities arise in slightly
11 different contexts. Given the fact that Imen is discussing judicial capacity using the same
12 statutory procedure system, it is persuasive in this circumstance.

13        In terms of the substantive standard, the facts of this case largely satisfy the factors
14 enumerated in Imen. The California Supreme Court has provided a roughly equivalent list of
15 factors as: "Indicia of proceedings undertaken in a judicial capacity include a hearing before an
16 impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena,
17 call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral
18 and written argument; the taking of a record of the proceeding; and a written statement of reasons
19 for the decision." Pac. Lumber Co. v. State Water Res. Control Bd., 37 Cal. 4th 921, 944 (Cal.
20 2006) (citing People v. Sims, 32 Cal.3d 468, 480 (Cal. 1982)). Franklin was represented by legal
21 counsel through these proceedings. Doc. 43-2, Ex. F. He also had the opportunity to present
22 evidence and cross examine witnesses. Doc. 43-2, Ex. E. No party directly addresses whether the
23 parties had the power to subpoena witnesses nor if the testimony of the witnesses was given under
24 oath, but the applicable statute provisions do suggest that a party is "entitled to the issuance of
25 subpoenas to compel the attendance of witnesses and the production of books, documents or other
26 things" (Cal. Gov. Code § 11509) and that "Oral evidence shall be taken only on oath or
27 affirmation" (Cal. Gov. Code § 11513(a)). After the hearing before the ALJ was held but before
28 the proposed decision, a transcript of the hearing was prepared and the parties were able to use it

1  to provide written briefing to the ALJ. Doc. 43-2, Ex. F.  Similarly, this entire record was given to
2  the City Council and the parties provided additional written briefing to the City Council in lieu of
3  oral argument. Doc. 43-2, Exs. H and I.  The Administrative Decision is a detailed written
4  statement of the reasons of the decision in a form that was relevant for any later judicial review.
5  Doc. 43-2, Ex. I.  Taken as a whole, these factors (putting aside the issue of the impartiality of the
6  decision maker which is separately discussed below) suggest that the Administrative Process was
7  conducted in a manner that satisfied the judicial capacity requirement of Utah Construction.  The
8  proceedings resembled that of a trial and appeal.  "[A]n administrative ruling is only entitled to
9  preclusive effect when that proceeding 'was conducted with sufficient safeguards to be equated
10 with a state court judgment.'" Guru Nanak Sikh Soc'y v. Cty. of Sutter, 326 F. Supp. 2d 1128,
11 1134 (E.D. Cal. 2003) (quoting Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1033 (9th Cir. 1994)).

12        Franklin's other main objection is that the City Council was not an impartial arbiter.
13 "Unless a decision maker has a financial interest in the outcome of the hearing, he or she is
14 presumed to be impartial. Bias and prejudice must be established by clear evidence. It is not
15 enough to overcome the presumption of impartiality for a party to show the appearance of bias. A
16 party must show either actual bias or show a situation in which 'experience teaches that the
17 probability of actual bias on the part of the…decisionmaker is too high to be constitutionally
18 tolerable.'" Hauser v. Ventura Cty. Bd. of Supervisors, 20 Cal. App. 5th 572, 580 (Cal. App. 2nd
19 Dist. 2018) (citing Morongo Band of Mission Indians v. State Water Resources Control Bd., 45
20 Cal. 4th 731, 737 (Cal. 2009); BreakZone Billiards v. City of Torrance, 81 Cal. App. 4th 1205,
21 1237 (Cal. App. 2nd Dist. 2000); Gai v. City of Selma, 68 Cal.App.4th 213, 219 (Cal. App. 5th
22 Dist. 1998)).  "The generally accepted linguistic formation of the rule against bias has been framed
23 in terms of probabilities, not certainties. The law does not require the disappointed applicant to
24 prove actual bias. Rather, there must not be 'an unacceptable probability of actual bias' on the part
25 of the municipal decision maker." Woody's Grp., Inc. v. City of Newport Beach, 233 Cal. App.
26 4th 1012, 1021-22 (Cal. App. 4th Dist. 2015) (citations omitted).

27        Franklin cites to the operative complaint and argues "the FAC alleges that Franklin
28 engaged in a string of protected actions against the City - filing DFEH Complaints, filing legal

actions based on retaliation/discrimination - which were followed by an 'adverse protected action' - i.e., overruling an impartial ALJ decision to terminate Franklin's employment. These allegations establish a prima facie case of retaliation or discrimination under the FEHA, Title VII, Section 1983 and Section 1981" Doc. 45, 12:10-14.  While such allegation might be sufficient to state a claim, they do not demonstrate a sufficiently high probability of bias which is a separate standard. Franklin argues that in this case the City Council has become entangled in this case in a way that violates the restriction that "The decision may not be made by a decisionmaker who has become personally 'embroiled' in the controversy to be decided." Mennig v. City Council, 86 Cal. App. 3d 341, 351 (Cal. App. 2nd Dist. 1978).  However, in Menning, the defendant members of the city council who made the ultimate administrative decision were also witnesses who testified before a civil service commission about the plaintiff's alleged misconduct. Mennig v. City Council, 86 Cal. App. 3d 341, 351 (Cal. App. 2nd Dist. 1978).  As Franklin himself highlighted, "once the civil service commission had determined that the bulk of the charges which the members of the city council had attempted to support by their testimony were unfounded, a degree of embroilment developed which 'experience teaches' created such a 'probability of actual bias' in the members of the council that their further participation as decisionmakers was constitutionally intolerable. At that point in the proceedings, the members of the city council, if not fighting for their collective political lives, were nevertheless impelled to seek vindication. *They in fact did so in their resolution increasing the penalty against Mennig by recording as true facts to which they had testified which the commission had found to be unsubstantiated*." Mennig v. City Council, 86 Cal. App. 3d 341, 351 (Cal. App. 2nd Dist. 1978), emphasis added (citations omitted).  Franklin has not alleged any even remotely similar level of entanglement by the members of City Council in this case.  The fact that the decision maker in an administrative process is a defendant in a civil lawsuit is not, by itself, sufficient to demonstrate a high probability of bias. See S. Cal. Underground Contractors, Inc. v. City of San Diego, 108 Cal. App. 4th 533, 549 (Cal. App. 4th Dist. 2003) ("SoCal further asserts City was biased because it was named as a defendant in SoCal's multimillion-dollar lawsuit alleging improper debarment. Although the probability of bias can arise from 'the pecuniary interests of board members', the individual City Council members

are not named as defendants in SoCal's lawsuit, and thus have no personal pecuniary interest in the outcome of that case. Further, any financial impact of the lawsuit against City is remote, contingent and uncertain, and is thus insufficient to constitute the type of pecuniary interest necessary to disqualify City from participating in the debarment proceedings").

Franklin also suggests that reliance on Section 11517(c) procedures demonstrates bias since "if the City Council had wanted to meet the higher standard of "fairness" under Utah Constr., it could have done so by participating in the hearing with the assistance of the ALJ. (Government Code §11517(b).)"  The procedures of Section 11517(b) apply when "a contested case is originally heard before an agency itself….[and] An administrative law judge shall be present during the consideration of the case and, if requested, shall assist and advise the agency in the conduct of the hearing." Cal. Gov. Code § 11517(b).  Instead of the Section 11517(c) procedure of having the ALJ reviewing the case first and then having the agency consider that proposed decision as a second step, the Section 11517(b) procedure handles the case in a single step.  But again, this assertion that resort to Section 11517(c) procedures demonstrates bias does not accord with Imen.  In that case, as here, the procedures of Section 11517(c) were used instead of Section 11517(b).  Resort to that adjudicatory process does not imply any bias.

The three Utah Construction requirements are met in this case.

**2. Claim Preclusion**

Defendants then assert that the third, fourth, seventh, and eighth causes of action should be barred due to claim preclusion. Doc. 43-1, 18:17-22; Doc. 45, 3:6, 4:3-4, and 5:17-19.  "Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (Cal. 2015) (quoting Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896 (Cal. 2002).  Here, Franklin, the party against which collateral estoppel is sought, was a party to the Administrative Decision; privity between parties is satisfied.  As Franklin has acknowledged, the Administrative Decision is final; it is a final

judgment on the merits. The point in dispute is whether the Administrative Decision and the present retaliation claims involve the same cause of action.

> California courts, unlike federal courts, do not determine whether two suits involve the same cause of action by applying the "same transaction or occurrence" or "common nucleus of operative facts" test. Instead, California courts will hold that two suits involve the same cause of action when they involve the same "primary right." Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009). Under this theory "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." [Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 904 (Cal. 2002).] "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." Id. Thus, in California, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2009) (quoting Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 197 Cal. Rptr. 612, 614 (Ct. App. 1983)). "The critical focus of primary rights analysis is the harm suffered." Brodheim, 584 F.3d at 1268 (citations and internal quotation marks omitted). California's primary rights theory can be complicated, and we have cautioned against wielding the "primary right brush . . . too carelessly" and noted the possibility that "different primary rights may be violated by the same wrongful conduct" under certain circumstances. San Diego Police Officers' Ass'n, 568 F.3d at 734 (internal quotation marks omitted).

Furnace v. Giurbino, 838 F.3d 1019, 1024 (9th Cir. 2016). But, in general, "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 798 (Cal. 2010). Working with case law, courts have been warned to be cognizant of "distinguishable factual contexts." Hi-Desert Med. Ctr. v. Douglas, 239 Cal. App. 4th 717, 740 (Cal. App. 2nd Dist. 2015).

Here the parties point to different case authorities that appear to disagree about the application of the primary rights doctrine. Franklin argues that "the civil service action protects a different primary right than that which is the basis of the civil rights causes of action." Doc. 45, 6:26-27. In terms of employment, some courts have found the right to continued employment to be distinct from the right to be free from employment discrimination. See George v. Cal. Unemployment Ins. Appeals Bd., 179 Cal. App. 4th 1475, 1483-84 (Cal. App. 5th Dist. 2009) ("The primary right protected by the state civil service system is the right to continued employment, while the primary right protected by FEHA is the right to be free from invidious discrimination and from retaliation for opposing discrimination"); Henderson v. Newport-Mesa

14

Unified Sch. Dist., 214 Cal. App. 4th 478, 502 (Cal. App. 4th Dist. 2013); Koosemans v. Siskiyou Joint Cmty. Coll., 2021 U.S. Dist. LEXIS 158789, *28 (E.D. Cal. Aug. 20, 2021).  But, other courts have come to the opposite conclusion. See Takahashi v. Bd. of Trs., 783 F.2d 848, 851 (9th Cir. 1986) (in a discrimination suit, "Takahashi's first action was based on the invasion of her contractual right to employment by the District. In that litigation, Takahashi challenged the Commission's finding that cause existed for the termination of her contract… In the present action, the identical primary right -- the contractual right to employment -- is at stake. In determining the primary right at stake, 'the significant factor is the harm suffered.' [] Absent termination of her employment contract, Takahashi suffered no harm."); see also Garcia v. Bostic, 818 F. App'x 686, 689 (9th Cir. 2020) ("Courts in this circuit and in California have consistently rejected the proposition that a termination becomes a different primary right or different cause of action simply because the plaintiff subsequently opts to allege the termination as a constitutional deprivation.").  On this contested point, this court recently stated in a case with similar facts that the argument "that preclusion cannot apply because the [administrative] proceeding involved a different primary right from what is at stake in this case (i.e., reinstatement of employment versus legal damages)—has already been rejected by California courts." Oreizi v. Cty. of Fresno, 2022 U.S. Dist. LEXIS 8244, at *27 (E.D. Cal. Jan. 15, 2022), citing Castillo v. City of L.A., 92 Cal. App. 4th 477, 486-87 (Cal. App. 2nd Dist. 2001).  Following the Ninth Circuit's analysis in Takahashi, the Administrative Proceeding and employment discrimination/retaliation claims share a primary right since they grow out of the same harm suffered.  The FEHA, Section 1981, and Section 1983 causes of action are dismissed due to claim preclusion.

**B. Title VII Retaliation**

The sixth cause of action alleges retaliation in violation of Title VII.  As Franklin points out, Defendants have not made any argument to dismiss this claim. Doc. 45, 1:2-8.  This claim remains.

**C. Statute of Limitations**

Defendants argue that the ninth and tenth causes of action (whistleblower retaliation and invasion of privacy) are barred by the statute of limitations and failure to comply with the California Tort Claims Act. These are causes of action that were not in the original complaint, but were first brought up in the Proposed Amended Complaint and formally added in the First Amended Complaint. Both causes of action accrued in March 2018. Franklin made a written request for damages on April 2, 2018, within the six month limit for presentment of claims to the government agency required by Cal. Gov. Code § 911.2. Doc. 43-2, Ex. K. The City of Kingsburg denied the request on April 17, 2018 and gave notice that Franklin had to file a claim within six months of the denial pursuant to Cal. Gov. Code § 945.6. Doc. 43-2, Ex. L. Franklin filed the Proposed Amended Complaint, which included the ninth and tenth causes of action, on July 16, 2018. Doc. 7-1, Ex. B. The First Amended Complaint was not formally filed until September 12, 2019, well past the six month Section 945.6 limit. Doc. 22.

Defendants cite to Willis v. City of Carlsbad, 48 Cal. App. 5th 1104, 1121 (Cal. App. 4th Dist. 2020) for the proposition that equitable tolling does not apply but that case discussed the absolute requirement that the claim had to be presented to the government agency within six months as required by Section 911.2 (which Franklin did) rather than the Section 945.6 requirement that a plaintiff file suit within six months after the claim's denial. Franklin cites the more relevant precedent of Addison v. State, 21 Cal. 3d 313 (Cal. 1978). In that case, which discussed the Section 945.6 requirement, the plaintiff filed suit in federal court within the six month limit but the suit was dismissed for lack of jurisdiction; the plaintiff then filed suit in state court outside of the six month limit. Addison v. State, 21 Cal. 3d 313, 315 (Cal. 1978). The California Supreme Court approved of tolling, stating "As we have noted, plaintiffs filed their state court action within nine months after their right to sue arose and by reason of the federal suit, defendants were fully notified within the six-month statutory period of plaintiffs' claims and their intent to litigate. Defendants were informed at all times of the nature of plaintiffs' claims." Addison v. State, 21 Cal. 3d 313, 321 (Cal. 1978). In this case, Defendants were notified of Franklin's intent to pursue the claims within the six month time limit since he filed the Proposed Amended Complaint which included the two additional claims. The filing of the First Amended

16

Complaint was not perfected until after the six month period had passed but tolling should apply in this circumstance.

**D. Invasion of Privacy**

The tenth cause of action is for invasion of privacy based on allegations that "prior to March of 2018, Defendants, and each of them, enabled the general public to have access to his personnel file and to other private documents pertaining to his employment relationship with the City of Kingsburg, including write-ups, psychiatric evaluation, contents of investigative reports, and other documents. This access was provided through a link on the City of Kingsburg's City Council meeting agenda. A request was made by or behalf of Plaintiff to remove all links to this information, but that request was substantially ignored." Doc. 22, 21:13-19. Defendants argue that an invasion of privacy claim is barred by the operation of the Government Claims Act. "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815. Defendants point out that there is no statute that directly allows for an invasion of privacy cause of action against a public entity. See Doc. 43-1, 20:22-25. Franklin points to Article I, Section 1 of the California Constitution which states "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." The California Supreme Court has stated that the language "creates a right of action against private as well as government entities." Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 20 (Cal. 1994). But, it has also "suggest[ed] it is an open question whether the state constitutional privacy provision, which is otherwise self-executing and serves as the basis for injunctive relief, can also provide direct and sole support for a damages claim." Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286 (Cal. 2009), citing Katzberg v. Regents of University of California, 29 Cal.4th 300, 313 n.13 (Cal. 2002). Several cases have interpreted the claim to be limited, allowing only injunctive relief and barring money damages. See Clausing v. S.F. Unified Sch. Dist., 221 Cal. App. 3d 1224, 1238 (Cal. App. 1st Dist. 1990) ("the constitutional provision protecting the right of

privacy (Cal. Const., art. I, § 1) is self-executing and supports a cause of action for an injunction"); Blanco v. Cty. of Kings, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ("California Constitutional right to privacy contained in article I, section 1 does not give rise to a cause of action for money damages"); Novel v. L.A. Cnty, 2019 U.S. Dist. LEXIS 227313, at *16 (C.D. Cal. July 23, 2019) ("while a plaintiff can sue to stop the government from violating its right to privacy, a plaintiff may not recover monetary damages for the violation"); Easley v. Flores, 2016 U.S. Dist. LEXIS 203117, at *14 (C.D. Cal. Mar. 14, 2016) ("Sections 1 and 7 do not provide a private right of action for damages").  While this point is contested, the weight of the case law appears to establish that only injunctive relief is available.

Additionally, Franklin argues that release of his medical information is a violation of the California Confidentiality of Medical Information Act. Doc. 45, 18:14-21.  That law states in relevant part:

> No employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such use or disclosure, except as follows:
>
> (1) The information may be disclosed if the disclosure is compelled by judicial or administrative process or by any other specific provision of law.
>
> (2) That part of the information which is relevant in a lawsuit, arbitration, grievance, or other claim or challenge to which the employer and employee are parties and in which the patient has placed in issue his or her medical history, mental or physical condition, or treatment may be used or disclosed in connection with that proceeding.

Cal. Civ. Code § 56.20(c).  Monetary damages are available for violations of Section 56.20. Cal. Civ. Code § 56.35.  This law also appears to apply to public entities. See Loder v. City of Glendale, 14 Cal. 4th 846, 859-62 (Cal. 1997) (analyzed the claim without directly addressing whether suit could be brought against public entity City of Glendale).

Franklin's invasion of privacy claim is construed as a claim under Section 56.20.

/ / /

/ / /

/ / /

## IV. Order

Defendants' motion to dismiss is GRANTED in part and DENIED in part. The third, fourth, seventh, and eighth causes of action are dismissed.

IT IS SO ORDERED.

Dated: __March 17, 2022__              _____
                                        SENIOR DISTRICT JUDGE