UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VERNON FRANKLIN,**<br><br>**Plaintiff**<br><br>v.<br><br>**CITY OF KINGSBURG and DOES 1-20 inclusive,**<br><br>**Defendants** | **CASE NO. 1:18-CV-0824 AWI SKO**<br><br>**ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(Doc. No. 51) |

This is an employment dispute involving Plaintiff Vernon Franklin ("Franklin") and his former employer the City of Kingsburg ("the City"). In the First Amended Complaint ("FAC"), which is the operative complaint, Franklin alleges violations of the California Fair Employment and Housing Act (Cal. Gov. Code § 12940) ("FEHA"), whistleblower retaliation under California Labor Code § 1102.5, invasion of privacy under California Civil Code § 56.20, Title VII (42 U.S.C. § 2000e), 42 U.S.C. § 1981, 42 U.S.C. § 1983. Currently before the Court is the City's Rule 12(c) motion for judgment on the pleadings. For the reasons that follow, the motion will be denied.

**BACKGROUND**

From the FAC, from 2006 to 2018, Franklin was employed as a firefighter/paramedic by the City and was the City's only African-American firefighter/paramedic. At all relevant times, Franklin performed his tasks in an objectively reasonably and satisfactory manner. However, Franklin had experienced disparate treatment in some instances compared to non-African-American firefighters. Further, beginning in late 2015, after Franklin unsuccessfully requested

1  training regarding the care, testing, maintenance, and servicing of Self-Contained Breathing
2  Apparatus equipment, the City through Fire Chief Ray began to improperly discipline and retaliate
3  against Franklin.  This discipline and retaliation ultimately led to Franklin's termination in 2018,
4  even though an Administrative Law Judge found in favor of Franklin and had ordered
5  reinstatement.[1]

6       Franklin filed complaints with the DFEH and the EEOC.  Franklin received a right to sue
7  letter from the EEOC on December 26, 2017, and received a right to sue letter from the DFEH on
8  September 1, 2017.

9       On March 26, 2018, Franklin filed his Original Complaint in the Fresno County Superior
10 Court.  See Doc. No. 1 at Ex. A.  The Original Complaint contained only claims for violations of
11 the FEHA, Title VII, § 1981, and § 1983.  See id.

12      Franklin presented a California Government Claims Act ("CGCA") complaint to the City
13 on March 28 , 2018, pursuant to Cal. Gov. Code § 945.4.

14      The City denied the CGCA complaint on April 15, 2018.

15      On June 14, 2018, the City removed the case to this Court.

16      On June 21, 2018, the City filed a Rule 12(b)(6) motion to dismiss.  See Doc. No. 6.

17      On July 16, 2018, Franklin filed an opposition that included a proposed amended
18 complaint that added claims under Labor Code § 1102.5 (hereinafter "§ 1102.5") for
19 whistleblower retaliation and under Civil Code § 56.20 (hereinafter "§ 56.20") for invasion of
20 privacy

21      On July 10, 2019, the Court issued an order on the Rule 12(b)(6) motion.  See Doc. No. 18.
22 The Court dismissed the first cause of action (FEHA discrimination under § 12940(a)), the second
23 cause of action (FEHA harassment under § 12940(j)), and the fifth cause of action (Title VII
24 discrimination) for failure to properly exhaust administrative remedies.  See id.  The Court did not
25 allow Franklin to file the proposed amended complaint, but instead required him to follow the
26 formal procedures for filing an amended complaint.  See id.

---

[1] This paragraph is intended to be only a nutshell synopsis of the factual allegations in the FAC, which contain significantly greater detail. For purposes of this motion, the procedural history, as opposed to the factual history, is more important to resolving the City's motion.

1    Pursuant to a stipulation, Franklin filed the FAC on September 12, 2019.  See Doc. Nos.
2  21, 22.  The FAC contains the same causes of action as the original Complaint, except that it
3  added causes of action under § 1102.5 and § 56.20.[2]  Cf. Doc. No. 22 with Doc. No. 1 at Ex. A.
4    On May 29, 2020, the Court issued an order on a second Rule 12(b)(6) motion filed by the
5  City against the FAC.  See Doc. No. 32.  The Court again dismissed the first, second, and fifth
6  causes of action because those claims had inadvertently been included in the FAC.  See id.  The
7  Court also stayed the case pursuant to the *Younger* abstention doctrine.  See id.
8    On April 2, 2021, Franklin filed a motion to amend.  See Doc. No. 37.
9    On June 30, 2021, the Court denied the motion to amend and lifted the stay.  See Doc. No.
10 42.
11   On July 21, 2022, the City filed a third Rule 12(b)(6) motion to dismiss.  See Doc. No. 43.
12   On March 17, 2022, the Court granted the third motion in part and dismissed the third
13 cause of action (FEHA retaliation under § 12940(h), the fourth cause of action (failure to provide a
14 workplace free of harassment, retaliation, and discrimination in violation of FEHA § 12940(k)),
15 the seventh cause of action (§ 1981), and the eighth cause of action (§ 1983).  See Doc. No. 49.
16 Following this order, the remaining claims in the FAC are the sixth cause of action (Title VII
17 retaliation), the ninth cause of action (whistleblower retaliation under § 1102.5), and the tenth
18 cause of action (invasion of privacy under § 56.20).  See Doc. Nos. 18, 49.
19   On April 27, 2022, the City filed this Rule 12(c) motion for judgment on the pleadings.
20 See Doc. No. 51.  The City seeks judgment on the § 1102.5 and § 56.20 causes of action.  See id.
21
22                    **LEGAL FRAMEWORK – RULE 12(c)**
23   Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within
24 such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R.
25 Civ. Pro. 12(c).  Because the motions are functionally identical, the same standard of review
26 applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion.  Gregg v. Department of

---

[2] The Civil Code § 56.20 claim is actually styled in the FAC as an invasion of privacy claim.  See Doc. No. 22. However, as part of an order on a Rule 12(b)(6) motion, the Court construed the invasion of privacy claim as a claim under § 56.20.  See Doc. No. 49.

1  Public Safety, 870 F.3d 883, 887 (9th Cir. 2017).  The non-moving party's allegations are
2  accepted as true, and all reasonable inferences are drawn in the non-moving party's favor.  See
3  Herrera v. Zumiez, Inc., 953 F.3d 1063, 1068 (9th Cir. 2020); Hines v. Youseff, 914 F.3d 1218,
4  1227 (9th Cir. 2019).  Any allegations made by the moving party that have been denied or
5  contradicted are assumed to be false.  See MacDonald v. Grace Church Seattle, 457 F.3d 1079,
6  1081 (9th Cir. 2006); Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th
7  Cir. 1989).

## DEFENDANT'S MOTION

*Defendant's Arguments[3]*

The City argues that Franklin's ninth claim (whistleblower retaliation under § 1102.5) and tenth claim (invasion of privacy through § 56.20) should be dismissed because Franklin did not comply with the requirements of the CGCA.  Specifically, to comply with the CGCA, Franklin was required to submit a tort claim with the City and receive a rejection notice before commencing suit.  However, Franklin commenced his suit prior to the City's April 17, 2018 denial of his CGCA complaint.  Because amendment cannot cure this non-compliance with the CGCA, judgment should be entered against Franklin on the ninth and tenth causes of action.

In reply, the City argues *inter alia* that Franklin's position that only claims that are expressly labeled "cause of action" in a complaint are considered properly alleged is contrary to California law.  In California, a complaint will be adequate if its factual allegations support a cause of action on any available legal theory, irrespective of whether the legal theory is identified or not.  The Original Complaint filed in state court contained the factual allegations that served as the bases of Franklin's CGCA complaint and the express § 1102.5 and § 56.20 claims in the FAC.  Because these facts were alleged in the Original Complaint, the Original Complaint contained the § 1102.5 and § 56.20 causes of action.  Also, in his oppositions to prior motions to dismiss,

---

[3] The Court notes that a considerable section of the City's motion address claims against Fire Chief Tim Ray. However, on the same day that Franklin filed his opposition, Ray was dismissed from this case by stipulation.  See Doc. Nos. 53, 55.  Because Ray is no longer a party to this litigation, the City's arguments related to Ray are moot and will not be addressed.

4

1 Franklin admitted that invasion of privacy was pled and a recovery was sought for this injury in
2 the Original Complaint. To accept Franklin's position would nullify the entirety of the CGCA,
3 whose purpose is to provide a public entity sufficient information to enable it to adequately
4 investigate claims and to settle them (if appropriate) without the need for the expense of litigation.
5 The City has not been spared the litigation for the two CGCA claims in this case because it is
6 incurring litigation costs for covered claims before a CGCA complaint was even filed.

7      *Plaintiff's Opposition*

8      Franklin argues that the City is misreading the applicable requirements of the CGCA.
9 Government Code § 945.4 prohibits a party from bringing a cause of action against a public entity
10 until after the cause of action has been presented and the claim acted upon by the public entity.
11 However, no causes of action subject to the CGCA were alleged in the FAC until after the City
12 denied the CGCA claim. The causes of action alleged in the Original Complaint were not subject
13 to the CGCA. The FAC was filed because the City had finally denied the CGCA claim. That is,
14 the ninth and tenth causes of action appeared in the FAC, and the FAC was filed after the City
15 denied the CGCA claim. Therefore, the ninth and tenth causes of action comply with the CGCA.
16 The City cites no case law that holds that a complaint that contains only CGCA exempt causes of
17 action cannot be amended to include CGCA applicable causes of action after a governmental
18 entity denies a CGCA claim.

19      *Legal Standard*

20      Suits for money or damages against a California public/governmental entity are regulated
21 by the CGCA. DiCampli-Mintz v. County of Santa Clara, 55 Cal.4th 983, 989 (2012). In part, the
22 CGCA provides that "no suit for money or damages may be brought against a public entity on a
23 cause of action for which a claim is required to be presented . . . until a written claim therefor has
24 been presented to the public entity and has been acted upon . . . or has been deemed to have been
25 rejected . . . ." Cal. Gov. Code § 945.4; DiCampli-Mintz, 55 Cal.4th at 990. That is, "[o]nly after
26 the public entity's board has acted upon or is deemed to have rejected the claim may the injured
27 person bring a lawsuit alleging a cause of action in tort against the public entity." Shirk v. Vista
28 Unified Sch. Dist., 42 Cal.4th 201, 209 (2007); Lowry v. Port San Luis Harbor Dist., 56

1  Cal.App.5th 211, 219 (2020); see Nguyen v. L.A. Cnty. Harbor/UCLA Med. Ctr., 8 Cal.App.4th
2  729, 333 (1992) ("The presentation of a claim to a public entity and its rejection are prerequisites
3  to maintaining suit against the entity."). The claim presentation requirements of the CGCA
4  constitute an element of any cause of action that is subject to the CGCA. California-American
5  Water Co. v. Marina Coast Water Dist., 86 Cal.App.5th 1272, 1287 (2022); see also Shirk, 42
6  Cal.4th at 209.

   *Discussion*

8       A significant issue was raised as part of the City's reply. Namely, whether the § 1102.5
9  and § 56.20 causes of action were actually alleged within the Original Complaint, even though
10 they were not separately and expressly identified as distinct causes of action or legal theories. The
11 Court agrees with the City that, because the Original Complaint was filed in state court, it is
12 appropriate to look at California's demurrer standards to determine whether these two causes of
13 action were actually alleged in the Original Complaint.

14      The City's emphasis on the importance of the factual allegations, irrespective of identified
15 legal theories, see Smith v. Wells Fargo Bank, N.A., 135 Cal.App.4th 1463, 1485 (2005),
16 indicates that the these causes of action were alleged in the Original Complaint. There is no
17 dispute that relevant factual predicates for both the § 1102.5 and § 56.20 claims were included in
18 the Original Complaint. Further, Franklin's statements in opposition to the prior motion to
19 dismiss also support the City's position. Franklin argued that invasion of privacy was part of the
20 Original Complaint and that damages were sought for that injury. See Doc. No. 26 at 9:14-15;
21 Doc. No. 45 at 19:2-3. Franklin also argued that both the § 1102.5 and § 56.20 claims were based
22 on the same conduct and factual allegation[s] as were alleged in the Original Complaint. See Doc.
23 No. 45 at 20:6-7.[4]

24      On the other hand, California courts will give a complaint "a reasonable interpretation,
25 reading it as a whole and its parts in their context." Centinella Freeman Emergency Medical
26 Associates v. Health Net of Cal., 1 Cal.5th 994, 1010 (2016). The structure of the Original

---

[4] The Court notes that it never quoted or relied on any of these statements when ruling on the motions to dismiss. See Doc. Nos. 32, 49.

1  Complaint contains a clearly labeled background section and eight clearly and distinctly alleged
2  separate causes of action.  See Doc. No. 1 at Ex. A.  The facts relevant to the § 1102.5 and § 56.20
3  claims appear either in the "background" section of the Original Complaint or under allegations
4  that attempt to describe various types of discrimination under Title VII and FEHA.  See id.  That
5  is, the relevant facts are not separated in any meaningful way from the clearly and distinctly
6  alleged FEHA and Title VII claims, rather, they are instances that are alleged to support an
7  inference of discrimination.  See id.  The context and structure of the Original Complaint suggest
8  that the § 1102.5 and § 56.20 causes of action are not actually alleged in the Original Complaint as
9  causes of action, even though relevant facts supporting these claims are pled.

10  Ultimately, whether the § 1102.5 and § 56.20 causes of action were alleged in the Original
11  Complaint will not change the outcome of this motion because the Court is largely persuaded by
12  Franklin's opposition.  Therefore, the Court will assume without deciding that the City's reply is
13  correct and that the § 1102.5 and § 56.20 causes of action were alleged in the Original Complaint.

14  So assuming, Franklin did not strictly comply with § 945.4 because he filed the Original
15  Complaint prior to the City rejecting his CGCA claim.  See Shirk, 42 Cal.4th at 209;  Nguyen, 8
16  Cal.App.4th at 333.  Indeed, the Original Complaint was filed on March 26, 2018, but his CGCA
17  complaint was filed on March 28, 2018.  The City is correct that under *Lowry*, this is a fatal defect
18  that cannot be saved by amendment.  See Lowry, 56 Cal.App.5th at 221.

19  In *Lowry*, the plaintiff Lowry was a harbor patrol officer employed by the Port San Luis
20  Harbor District, a public entity.  See id. at 215.  Lowry was injured while attempting to enter a
21  boat by climbing down a ladder.  See id.  Lowry missed the deadline for filing a timely CGCA
22  claim, so he filed an application with the Harbor District to present a late claim.  See id. at 216.
23  The same day that Lowry applied for permission to file a late claim, he filed a complaint in state
24  court.  See id. at 215.  Lowry alleged several claims under the Jones Act (46 U.S.C. § 30104), and
25  his wife alleged a claim for loss of consortium.  See id.  The state court granted a motion for
26  judgment on the pleadings based on non-compliance with the CGCA.  See id. at 216.  The *Lowry*
27  court affirmed the dismissal and held that the premature lawsuit did not comply with the CGCA.
28  See id. at 215, 219.  "Lowry failed to comply with the [CGCA] because he filed a complaint [in

7

1  court] before his claim was rejected [by the public entity]." Id.  The *Lowry* court distinguished
2  several older court of appeal decisions (including *Cory v. City of Huntington Beach*, 43
3  Cal.App.3d 131 (1974)) as inconsistent with the more recent California Supreme Court case of
4  *DiCampli-Mintz*.  See id. at 219-21.  Finally, the *Lowry* court found that, because the lawsuit was
5  not preceded by a rejection by the Harbor District of Lowry's CGCA claim, the lawsuit was
6  precluded and Lowry's noncompliance could not be cured by amendment.  See id. at 221.

7        Again, if the Court applies *Lowry*, then the City's Rule 12(c) motion would be granted
8  without leave to amend because amendment could not save the § 1102.5 and § 56.20 claims.
9  However, recent California authority has rejected *Lowry* in so far as *Lowry* concluded that the
10 doctrine of substantial compliance could never apply to § 945.4 *viz a vie* a prematurely filed
11 lawsuit.  See Malear v. State of Cal., 89 Cal.App.5th 213, 225 (2023).

12       *Malear* held that a prematurely filed complaint in state court that was amended to include
13 allegations of CGCA compliance after the State of California had denied a CGCA complaint, but
14 before either the original or amended complaint had been served on the State, substantially
15 complied with § 945.4.  See id. at 219, 225.  *Malear* relied heavily on *Cory v. City of Huntington*
16 *Beach*.  See id. at 221-22.  *Cory* in turn held that there is substantial compliance, and that a public
17 entity has "received every benefit which a provision for [claim] rejection prior to suit is intended
18 to serve," when a prematurely filed lawsuit is actually served on the public entity after the CGCA
19 claim has been rejected (irrespective of whether an amended complaint is involved).  See Cory, 43
20 Cal.App.3d at 146; see also Malear, 89 Cal.App.5th at 221-22.  *Malear* noted that the California
21 Supreme Court in *State of Cal. v. Superior Ct.*, 32 Cal.4th 1234 (2004) ("Bodde") held that strict
22 compliance with the CGCA need not be alleged, but that CGCA compliance or excuse must be.
23 See Malear, 89 Cal.App.5th at 222 (discussing Bodde, 32 Cal.4th 1234 at 1244-45).  *Malear*
24 pointed out that *Bodde* had cited "premature filing cases" such *Cory* with approval because those
25 cases did not excuse plaintiffs from alleging facts either showing or excusing CGCA compliance.
26 See Malear, 89 Cal.App.5th at 222 (citing Bodde, 32 Cal.4th at 1244).

27       *Malear* acknowledged *Lowry* but concluded that *Lowry* was reading *DiCampli-Mintz* too
28 broadly.  See id. at 223.  *Malear* explained that *DiCampli-Mintz* addressed the issue of whether the

plaintiff may substantially comply with the requirements of California Government Code § 915[5] when a CGCA complaint is presented to the wrong entity. See id. (discussing DiCampli-Mintz, 55 Cal.4th at 989, 994-95). *Malear* further explained that *DiCampli-Mintz* rejected the "*Jamison* rule," a lower court rule that recognized substantial compliance with § 915 if the wrong party served has a duty to notify the proper statutory agent. See id. (discussing DiCampli-Mintz, 55 Cal.4th at 994-95). The *Jamison* rule was contrary to the language of § 915, was unsupported by any relevant authority, had been repudiated by the same court in a later decision, and was in conflict with other authorities. See id. (discussing DiCampli-Mintz, 55 Cal.4th at 994-95). Contrary to *Lowry*, *Malear* concluded:

> Fairly read, *DiCampli-Mintz* did not purport to abrogate the substantial compliance doctrine in all cases subject to the [CGCA]. Rather, it rejected *Jamison*'s use of the doctrine to rewrite the "delivery provisions language of the statute" in a manner that was inconsistent with the statute's purpose and that threatened to "exponentially expand[]" the statute's scope and create uncertainty in the claim presentation process.

Id. As in *Cory*, *Malear* found that there had been substantial compliance with § 945.4 because the mere filing of a premature complaint does not deprive the public entity of its ability to consider a pending CGCA claim or cause the public entity to incur litigation costs, since it is the service of process that triggers various litigation deadlines. See id. at 224-25.

After consideration, the Court is persuaded by *Malear*'s reading of *DiCampli-Mintz* that the doctrine of substantial compliance can apply to a prematurely filed lawsuit. The Court is also persuaded by *Malear* that *Cory* remains good law. Because *Lowry* reaches contrary conclusions, the Court declines to apply *Lowry* and will instead follow *Malear*.

Applying *Malear* and *Cory* to the facts of this case, although the Original Complaint was filed on March 26, 2018, the City was not served with the Original Complaint until sometime in May 2018, but no earlier than May 15, 2018.[6] However, the City had already rejected Franklin's

---

[5] This part of the CGCA identifies individuals who may receive CGCA complaints on behalf of a public entity. See Cal. Gov. Code § 915.

[6] This case was removed on June 14, 2018. The notice of removal does not identify the precise date when Franklin served process on the City, but the notice does allege that removal was timely in that it was removed within 30 days of service of process. See Doc. No. 1. Therefore, for removal to be timely (as alleged by the City), the earliest the Original Complaint could have been served would have been May 15, 2018.

9

CGCA claim on April 15, 2018.  Thus, at least one month prior to being served with the Original Complaint, the City had investigated Franklin's CGCA complaint, could begin to take potentially corrective actions to avoid similar incidents if it desired, decided not to settle the matter, and incurred zero litigation expenses.  The purpose of the CGCA is to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation," as well as to "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." City of Stockton v. Superior Ct., 42 Cal.4th 730, 738 (2007); Malear, 89 Cal.App.5th at 224.  Thus, the purposes of § 945.4 had been fulfilled, and the City had obtained every benefit of the claim presentation requirement, because the City was not served with the Original Complaint until after Franklin's CGRA complaint had been denied.  See City of Stockton, 42 Cal.4th at 738; Malear, 89 Cal.App.5th at 221-26; Cory, 43 Cal.App.3d at 146; see also Andrews v. Metro Transit System, 74 Cal.App.5th 597, 607 (2022) (explaining that the doctrine of substantial compliance excuses strict compliance when there is "actual compliance in respect to the substance essential to every reasonable objective of the statute.").  Under *Malear* and *Cory*, Franklin has adequately satisfied the requirements of § 945.4.  Therefore, judgment on the pleadings is not appropriate.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for judgment on the pleadings (Doc. No. 51) is DENIED.

IT IS SO ORDERED.

Dated:   April 17, 2023                                                          _____
                                                                                                 SENIOR DISTRICT JUDGE